[No. 14948-0-III. Division Three. May 1, 1997.]

JAMES M. MCCOY, ET AL., *Appellants*, v. AMERICAN SUZUKI MOTOR CORPORATION, ET AL., *Respondents*.

108

*Roger A. Felice, Theresa L. Lalone,* and *Roger A. Felice, P.S.,* for appellants.

*Thomas V. Harris, Allan H. Baris,* and *Merrick, Hofstedt & Lindsey, P.S. (James M. Harris* and *Sidley & Austin,* of counsel), for respondents.

SWEENEY, C.J. — "[O]ne who imperils himself in order to rescue a person who is in danger of being injured or killed through the negligence of another person, may recover damages from the negligent person for injuries received while effecting such rescue." *Highland v. Wilsonian Inv. Co.,* 171 Wash. 34, 39, 17 P.2d 631 (1932). James M. McCoy saw a Suzuki Samurai swerve across the freeway and roll after hitting a patch of black ice. He stopped to help the occupants. He then helped a Washington State trooper by placing flares along the highway. Mr. McCoy was injured by a hit-and-run vehicle while returning to his car some two hours later.

Mr. McCoy and his wife, Donna McCoy, sued the driver and passenger of the Samurai based on the rescue doc-

trine.[1] They sued American Suzuki Motor Corporation and its parent company, Suzuki Motor Company, Ltd., (Suzuki) based on the Washington product liability act (PLA), RCW 7.72.[2]

Suzuki moved for summary judgment. The trial court concluded that the hit-and-run was a superseding cause which relieved Suzuki of liability. According to the trial judge, being struck by a hit-and-run driver was too remote a circumstance and therefore not a foreseeable consequence of a defective product. The court granted Suzuki's motion for summary judgment. The McCoys appeal.

The trial judge's analysis is sound if the question here is whether the McCoys' injuries are a foreseeable consequence of manufacturing a defective car. But their cause of action is based on the rescue doctrine. That doctrine varies the ordinary rules of negligence: "it permits the rescuer to sue on the basis of defendant's initial negligence toward the party rescued, without the necessity of proving negligence toward the rescuer . . . ." *Solgaard v. Guy F. Atkinson Co.*, 6 Cal. 3d 361, 491 P.2d 821, 99 Cal. Rptr. 29, 33 (1971). We therefore reverse the trial court's summary judgment order of dismissal of the McCoys' action and remand the matter for trial.

## DISCUSSION

In *French v. Chase*, 48 Wn.2d 825, 830, 297 P.2d 235 (1956), the court set out the four elements of the rescue doctrine:

(1) There must be negligence on the part of the defendant

---

[1]The McCoys claimed the driver had a duty to operate the "vehicle so as not to carelessly and/or negligently cause injury or damage to herself and other persons . . . and it was her duty not to place herself or other persons in a position of 'imminent peril to life or limb'." They alleged the passenger was liable because she interfered with the driver's control over the vehicle by grabbing the steering wheel.

[2]The McCoys' PLA cause of action against Suzuki is sufficient to invoke application of the rescue doctrine. The pleading gave Suzuki adequate notice of the general nature of the McCoys' claim. *Christensen v. Swedish Hosp.*, 59 Wn.2d 545, 548, 368 P.2d 897 (1962).

which is the proximate cause of peril, or what would appear to a reasonable person under the circumstances to be peril, to the life or limb of another.

(2) The peril, or reasonable appearance of peril, to the life or limb of another must be imminent.

(3) In determining whether the peril, or appearance of peril, is imminent, in the sense that an emergency exists requiring immediate action, the circumstances presented to the rescuer must be such that a reasonably prudent man, under the same or similar circumstances, would determine that such peril existed. (The issue of whether the rescuer's determination conformed with the reasonably prudent man standard is a question for the jury, under proper instructions.)

(4) After determining that imminent peril to life or limb of a person exists, the rescuer, in effecting the rescue, must be guided by the standard of reasonable care under the circumstances. (Whether there has been conformance with this standard also is a question for the jury, under proper instructions.)

(Emphasis omitted.) We first address Suzuki's threshold argument that the trial court did not err because the PLA eliminated the McCoys' cause of action based on the rescue doctrine.

A. Application of Product Liability Act. Suzuki argues that the PLA abrogated a rescue doctrine cause of action because the doctrine is an outgrowth of common law negligence. It relies on *Washington State Physicians Ins. Exch. & Ass'n v. Fisons Corp.*, 122 Wn.2d 299, 320, 858 P.2d 1054 (1993), for the proposition that liability under the PLA extends to those injuries caused directly "by the product to the person or the property of the claimant." (Emphasis omitted.) And it relies on *Ayers v. Johnson & Johnson Baby Prods. Co.*, 117 Wn.2d 747, 762, 818 P.2d 1337 (1991), for the proposition that the Legislature did not intend to engraft ordinary negligence principles onto the law of design defect product liability claims.

Neither *Fisons* nor *Ayers* is controlling. Neither decision

addressed or applied the rescue doctrine. The issue in *Fisons* was whether a treating physician had a cause of action against a drug company for personal and professional injuries he suffered when his patient had an adverse reaction to a drug. *Fisons*, 122 Wn.2d at 320. The court held that the facts did not support a cause of action under the PLA. *Id.* at 322. It observed that our courts have been cautious about extending a right to recover for emotional harm, "especially when the distress is the consequence of an injury suffered by a third person." *Id.* at 320-21 (plaintiff's emotional damages caused by witnessing or learning of a third person's physical injuries are compensable only in very limited circumstances). In contrast, our state has shown no reticence in extending the right to recover to a rescuer. *Highland*, 171 Wash. at 40; *Maltman v. Sauer*, 84 Wn.2d 975, 530 P.2d 254 (1975); *French*, 48 Wn.2d at 833 (Schwellenbach, J., concurring); *In re Estate of Keck*, 71 Wn. App. 105, 110, 856 P.2d 740 (1993); *Ballou v. Nelson*, 67 Wn. App. 67, 70, 834 P.2d 97 (1992) (doctrine encourages efforts to save imperiled persons).

In *Ayers*, the plaintiff's product liability suit was based on a manufacturer's failure to warn of the danger of aspirating baby oil. *Ayers* simply stands for the proposition that despite the language of RCW 7.72.030(1) (manufacturer subject to liability for design defect based on negligence), foreseeability is not an element of a failure-to-warn claim. *Ayers*, 117 Wn.2d at 761. We are not persuaded by Suzuki's claim that *Ayers* "makes [it] clear that the rescue doctrine cannot be 'engraft[ed]' onto a claim under the [PLA]."

Other jurisdictions have permitted recovery under the rescue doctrine in product liability claims. *Williams v. Foster*, 281 Ill. App. 3d 203, 666 N.E.2d 678 (1996) (rescuer sues manufacturer of water heater for injuries suffered rescuing family from burning home); *Welch v. Hesston Corp.*, 540 S.W.2d 127 (Mo. Ct. App. 1976) (injured volunteer fireman sues manufacturer of haystacker machine); *Govich v. North Am. Sys., Inc.*, 112 N.M. 226, 814 P.2d 94

(1991) (plaintiff sued manufacturer of coffee maker and component for damages suffered while attempting rescue of dog from burning house); *Guarino v. Mine Safety Appliance Co.*, 25 N.Y.2d 460, 255 N.E.2d 173, 306 N.Y.S.2d 942, 44 A.L.R.3d 467 (1969) (estate of rescuer who died of gas asphyxiation sues manufacturer of gas mask; court holds defendant manufacturer committed "culpable act" by manufacturing and distributing defective oxygen-producing mask); *Conaway v. Roberts*, 725 S.W.2d 377 (Tex. Ct. App. 1987) (rescuer sues manufacturer for injuries suffered when he comes to aid of neighbor trapped under riding lawn mower).

We also are not persuaded by Suzuki's argument that liability for a design defect under the PLA should not extend to bystanders. A bystander is one who is "present but not taking part." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 307 (1969); *see State v. Johnson*, 7 Wn. App. 527, 535, 500 P.2d 788 (1972) (bystanders are those who, "without intent, purpose or design to do other than be where they are, find themselves among a crowd or group of people"), *aff'd*, 82 Wn.2d 156, 508 P.2d 1028 (1973). A rescuer, however, reacts to the "cry of distress" with action. *Wagner v. International Ry.*, 232 N.Y. 176, 180, 133 N.E. 437, 19 A.L.R. 1 (1921). A rescuer voluntarily exposes himself or herself to danger. *Keck*, 71 Wn. App. at 110. Mr. McCoy was not a bystander. He was a rescuer.

"[W]hen one sees his fellow-man in such peril he is not required to pause and calculate as to court decisions, nor recall the last statute as to the burden of proof . . . ." *Highland v. Wilsonian Inv. Co.*, 171 Wash. 34, 41, 17 P.2d 631 (1932) (quoting *Norris v. Atlantic Coast Line R.R.*, 152 N.C. 505, 67 S.E. 1017 (1910)). Likewise, a potential rescuer should not have to "pause and calculate" the intricacies of the PLA before coming to the aid of one in peril. Application of the rescue doctrine does not, and should not, depend on the particular legal theory underlying the plaintiff's cause of action—so long as the conduct of the defendant created the peril which invited rescue.

The PLA has not eroded a rescuer's right to recover. We agree with the McCoys' contention that a rescuer, qualifying as such under the elements of *French*, may recover for injuries against the party who created the peril. We therefore apply the four elements of the rescue doctrine to the facts presented.

B. Rescue Doctrine.

1. Negligence proximately causing peril. The first element of *French v. Chase*, 48 Wn.2d 825, 830, 297 P.2d 235 (1956) requires "negligence on the part of the defendant which is the proximate cause of peril, or what would appear to a reasonable person . . . to be peril, to the life or limb of another." This provision therefore requires a determination of whether Suzuki is the proximate cause of the peril to the *driver and passenger of the Samurai*. This is a question for the trier of fact. It must determine if (1) the Samurai had a design defect and, if so, (2) whether the alleged defect proximately resulted in the peril here, as opposed to ice, excessive speed, the passenger's grabbing of the steering wheel, or any other factor. *French*, 48 Wn.2d at 830.

2. Imminence of peril or reasonable appearance of imminence. Suzuki asserts that the McCoys are not entitled to recovery under the rescue doctrine because the peril to the life and limb of the occupants of the Samurai was not imminent. It relies on *Hawkins v. Palmer*, 29 Wn.2d 570, 576, 188 P.2d 121 (1947). Again, the question of imminence is one for the trier of fact.

In *Hawkins*, the plaintiff drove onto the scene of a motorcycle accident. He left to summon help. When he returned, he assisted the ambulance attendants in removing the injured. While doing so, he was hit by a passing car and injured. *Id.* at 572. The plaintiff sued the ambulance company based on the rescue doctrine. The court concluded that the plaintiff was not engaged in a rescue. It recognized that every person who gives aid is not necessarily a rescuer. *Id.* at 576. The doctrine applies "when one acts impulsively, oblivious of peril, to save or assist an

injured person or a person whose injury is imminent; or when, conscious of the peril and weighing the consequences, he nonetheless goes to the aid of the injured person or the person whose injury is imminent." *Id.* The court held that the plaintiff did not knowingly encounter danger to assist the victims: "[t]he injured man seemingly was in no more imminent or serious peril at that moment than he had been for a considerable period of time prior thereto." *Id.* at 577. There was no known danger or peril threatening the victims. *Id.*

*Hawkins* is distinguishable. Here, oncoming traffic approached the scene of the accident around a slight curve. It was nighttime. The road was coated with black ice. Approaching traffic was not slowing down or moving to the inside lane. Whether the driver and passenger of the Samurai were in imminent peril is a factual question. *In re Estate of Keck*, 71 Wn. App. 105, 114, 856 P.2d 740 (1993) (relying on *French*, 48 Wn.2d at 830). Summary judgment is appropriate only when the pleadings, affidavits and depositions demonstrate there is no genuine issue of fact. *Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982). Considering all the facts and inferences therefrom in a light most favorable to the McCoys, we cannot say that reasonable persons could draw a single conclusion from the evidence. *Keck*, 71 Wn. App. at 114.

3. <u>Peril or reasonable appearance of peril.</u> Suzuki notes that Mr. McCoy continued to direct traffic and was returning to his car after the accident scene had been cleared. It argues that it was therefore unreasonable for Mr. McCoy to assume that the imminent peril continued.

As *French* makes clear, whether Mr. McCoy's perception of imminent peril was reasonable is a question of fact. *French*, 48 Wn.2d at 830. The rescue doctrine requires a focus on "how the injuries appeared *to the rescuer* at the time of the rescue for the purpose of establishing the reasonableness of his determination that the injured person was in imminent peril." *Id.* at 832. A reasonably prudent person could have concluded that the victims here

remained in imminent peril from traffic while Mr. McCoy assisted the trooper by setting out flares. Emergency workers removed the driver from the scene of the accident at about 6:50 p.m. Mr. McCoy started back to his car and was struck shortly before 7:00 p.m. The question of whether the peril was imminent is for the jury.

4. Reasonableness of conduct in effecting rescue. Finally, Suzuki argues that the rescue doctrine does not apply because Mr. McCoy was injured while returning to his vehicle.

If a plaintiff suffers an injury during the scope of a rescue, it is for the trier of fact to determine whether the rescuer, in effecting the rescue, was guided by the standard of reasonable care. *French*, 48 Wn.2d at 830. Mr. McCoy may have remained in the course of a rescue when he was directing traffic, even if the victims were no longer in danger, if he reasonably believed that the driver or her passenger was still in peril. *Id.*; *see Sweetman v. State Highway Dep't*, 137 Mich. App. 14, 357 N.W.2d 783 (1984) (whether rescuer's subsequent act of assuming function of traffic director on icy bridge after victim of accident was no longer in danger was within scope of rescue is question for trier of fact); *Keck*, 71 Wn. App. at 115 (rescuer remains in course of rescue attempt when he acts under reasonable belief that party's peril continues).

Given the facts here—darkness, icy highways, a curve just prior to the accident scene, and two victims being attended to on or near the highway—we conclude the jury might conclude Mr. McCoy's activities were within the scope of his rescue.

The order of summary judgment is reversed and the matter is remanded for trial.

BROWN, J., concurs.

THOMPSON, J. (dissenting) — The majority opinion accurately sets out the facts of this case. The trial court did not err in granting summary judgment because American

Suzuki Motor Corporation and Suzuki Motor Company, Ltd. (Suzuki) was not the proximate cause of James McCoy's injuries and the imminent danger element of the rescue doctrine was not met. Therefore, I respectfully dissent.

When a defendant's negligence creates a situation that immediately endangers the life of another, then the "peril invites rescue." *French v. Chase*, 48 Wn.2d 825, 829, 297 P.2d 235 (1956) (citing *Highland v. Wilsonian Inv. Co.*, 171 Wash. 34, 17 P.2d 631 (1932)). The rescue doctrine encourages individuals to render aid to those in danger, despite the rescuer's voluntary exposure to danger. *Ballou v. Nelson*, 67 Wn. App. 67, 70, 834 P.2d 97 (1992).

Under the rescue doctrine, the first inquiry should be whether Suzuki's negligence was the proximate cause of Mr. McCoy's injuries. *In re Estate of Keck*, 71 Wn. App. 105, 110, 856 P.2d 740 (1993). Proximate cause requires a showing of cause in fact and legal causation. *Christen v. Lee*, 113 Wn.2d 479, 507, 780 P.2d 1307 (1989). A cause in fact is cause but for which the accident would not have happened. *Channel v. Mills*, 77 Wn. App. 268, 272, 890 P.2d 535 (1995). Cause in fact is generally a question of fact. *Hartley v. State*, 103 Wn.2d 768, 778, 698 P.2d 77 (1985).

Legal causation involves " 'policy considerations of how far the consequences of a defendant's acts should extend,' " *Keck*, 71 Wn. App. at 111 (quoting *Christen*, 113 Wn.2d at 508), and is a question of law. *Id.* Determining whether legal causation exists requires consideration of causation, intervening events, duty, foreseeability, reliance, remoteness and privity. *Hartley*, 103 Wn.2d at 780. Further, the application of the rescue doctrine is limited to situations where the plaintiff can establish his injury was attributable to a cause which was reasonably foreseeable given the danger created by the defendant's original act of negligence. *Maltman v. Sauer*, 84 Wn.2d 975, 981, 530 P.2d 254 (1975).

Suzuki's alleged design defect was not the legal cause of

the injuries suffered by Mr. McCoy due to the hit-and-run driver. Injury caused by any alleged design defect was limited to the driver and passenger in the Suzuki under the facts of this case. To go beyond those immediately injured, Mr. McCoy has to rely on the rescue doctrine. But that doctrine is not applicable here. The alleged negligence is too remote and insubstantial to impose liability. *See Hartley*, 103 Wn.2d at 784 (state and county's failure to revoke defendant's driver's license was too remote and insubstantial to impose liability for wrongful death action); *Klein v. City of Seattle*, 41 Wn. App. 636, 639, 705 P.2d 806 (design defect in road was too remote to impose liability for accident caused by driver who had been drinking and was speeding), *review denied*, 104 Wn.2d 1025 (1985). Suzuki is not liable for Mr. McCoy's injuries because, as a matter of law, proximate cause cannot be established. In addition, Mr. McCoy's injuries are not attributable to a reasonably foreseeable event given the design defect. Even if Suzuki designed the Samurai defectively and because of that design should foresee injury, it could not possibly foresee that Mr. McCoy would have been victimized by a hit-and-run driver in these circumstances. Thus, not only was Suzuki's alleged negligence not the proximate cause of Mr. McCoy's injuries, the injuries he suffered were not within the reasonably foreseeable consequences of Suzuki's defective design of the Samurai.

The language of the rescue doctrine makes it clear that one element is the emergency nature of the situation that presents itself to the rescuer. Here, the required imminent danger to the driver and passenger did not exist when Mr. McCoy suffered his injuries. *French*, 48 Wn.2d at 830. Mr. McCoy suffered his injuries approximately two hours after the initial rescue. The element of urgency and need for immediate action had long since passed. Both victims and the vehicle had already been removed from the scene when the pickup hit Mr. McCoy. The peril was not im-

minent. The court did not err by granting Suzuki's motion for summary judgment.

Review granted at 133 Wn.2d 1027 (1997).